FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA 2005 NOV -2 PM 2: 46

DUBLIN DIVISION

CLERK_____
SO. DIST. OF GA.

WATRICKIO TAVORIA JOHNSON,       )
                                 )
        Petitioner,              )
                                 )
    v.                           )        CV 304-034
                                 )        (Formerly CR 302-005)
UNITED STATES OF AMERICA,        )
                                 )
        Respondent.              )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Watrickio T. Johnson, an inmate presently confined at the Federal Correctional Institution in Petersburg, Virginia, has filed with this Court a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the United States of America ("the government").

### I. DISCUSSION

**A.    Procedural Background**

In 2002, a federal grand jury indicted Petitioner, along with thirteen other individuals, with numerous drug offenses. United States v. Johnson, CR 302-005 (S.D. Ga. May 9, 2002), *hereinafter* "CR 302-005," doc. no. 3). On August 22, 2002, Petitioner appeared

before the Honorable Dudley H. Bowen, Jr., United States District Judge, and, pursuant to

a plea agreement (the "Agreement"), pleaded guilty to a lesser included offense (distribution

of five grams or more of cocaine base) of Count Thirty-One ("Count 31") of the indictment

-which charged Petitioner with distribution of fifty grams or more of cocaine base in

violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) and (b)(1)(A).[1]  CR 302-005, doc. nos.

3, 266 & 267.

In accordance with the Agreement, the government agreed (1) to dismiss all other

counts of the indictment related to Petitioner; (2) not to oppose an acceptance of

responsibility reduction under USSG § 3E1.1; (3) waive any applicable enhancement of the

statutory penalty under 21 U.S.C. § 851; (4) make no recommendation as to sentence; and

(5) advise the Court of the extent and value of any information, cooperation, or assistance

provided by Petitioner to the government in the investigation and prosecution of others.  CR

302-005, doc. no. 266, pp. 1-2; doc. no. 375, Rule 11 Tr., pp. 15-18.  Notably, the Agreement

specifically explained that the government had the duty and right "to bring all sentencing

facts to the attention of the sentencing court."  CR 302-005, doc. no. 266, p. 4.  The

Agreement also provided that the U.S. Probation Office would prepare a presentence

investigation report that would consider not only the conduct related to the offense of

conviction but also could consider conduct related to dismissed counts and Petitioner's

criminal history - all of which would be considered in determining a sentence.  Id.  The

Agreement further stated, "The defendant understands that the offense level and criminal

---

[1]The superseding indictment filed on September 25, 2003, after Petitioner's entry of a
guilty plea but prior to sentencing, did not change the charges against Petitioner.  CR 302-
005, doc. no. 276, p. 16.

history category determined by the United States Probation Office and the Court <u>may differ from that estimated or projected by defendant's counsel or the United States Attorney.</u> (<u>Id.</u>) (emphasis added).

In exchange, Petitioner agreed, *inter alia*, to waive "any and all rights to collateral post-conviction attack of the sentence imposed or the voluntariness, providence, or factual basis of the guilty plea entered pursuant to" the Agreement.  CR 302-005, doc. no. 266, p. 6; <u>see also</u> doc. no. 346, Sentencing. Tr., pp. 128-29; Rule 11 Tr., p. 16.  The Agreement further provided that despite the waivers, Petitioner had "the right to file a direct appeal (but not a collateral attack) of the sentence imposed (but not the voluntariness, providence, or factual basis of the defendant's entry of a guilty plea pursuant to this agreement), in the event the sentencing Court upwardly departs from the [applicable] guideline range. . . ." CR 302-005, doc. no. 266, p. 6.[2]  The Agreement also stated that the written document is the entire agreement and understanding between Petitioner and the government and that "the defendant has no other agreements, understandings, or deals with any person other than those set out in this plea agreement, that is, the defendant advises the Court that the defendant's entire understanding of this Plea Agreement is completely set forth in writing in this document." <u>Id.</u> at 7. Petitioner stated that he entered the Agreement as a matter of his "free and voluntary

---

[2]Judge Bowen specifically refused to accept the portion of the Agreement that barred Petitioner from filing a direct appeal, but he made clear that the waiver still applied to other forms of post-conviction relief. Sentencing Tr., pp. 128-29.

choice," after sufficiently consulting with an attorney who Petitioner believed had provided competent advice. Id. at 6-7.

Notably, the Agreement also spelled out that "the Court is free to impose any sentence authorized by law up to the statutory maximum sentence." Id. at 4. Judge Bowen specifically informed Petitioner prior to the entry of his guilty plea that the maximum statutory penalty was not less than five years and no more than forty years. Rule 11 Tr., p. 14. Petitioner stated that he understood the maximum penalty he faced. Id.

On February 12, 2003, Judge Bowen, finding no reason to depart from the sentencing range called for by the Guidelines, sentenced Petitioner to 262 months imprisonment and five years of supervised release; in addition, a $100 special assessment was imposed. CR 305-002, doc. no. 332; Sentencing Tr., pp. 125-27. Petitioner timely filed a direct appeal, but his sentence was affirmed on October 31, 2003. United States v. Johnson, No. 03-11360 (11th Cir. Oct. 31, 2003) (per curiam) (unpublished).[3] Petitioner then timely filed the above-captioned § 2255 motion alleging three grounds for relief: (1) ineffective assistance of counsel; (2) violation of Fed. R. Crim. P. 11; and (3) attribution of an incorrect drug quantity at sentencing.[4] The government argues that the § 2255 motion is barred by the Agreement.

---

[3]The Eleventh Circuit's unpublished opinion is attached as Exhibit 1 to the government's response in the above-captioned § 2255 action.

[4]As part of the alleged improper attribution of drug quantity at sentencing, Petitioner makes an argument based upon Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). The Blakely argument is addressed in more detail in Part I.D.

**B.**     **Waiver**

    **1.**     **Knowing and Voluntary Nature of Waiver**

    A waiver of appeal provision is enforceable if the waiver is knowing and voluntary.[5]

United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert,

997 F.2d 1343, 1350 (11th Cir. 1993)  "To establish the waiver's validity, the government

must show either that (1) the district court specifically questioned the defendant about the

provision during the plea colloquy, or (2) it is manifestly clear from the record that the

defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the

government meets this burden in the instant case, then almost all of Petitioner's current

claims are barred from review.[6]  See United States v. Pease, 240 F.3d 938, 942 (11th Cir.

2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned

during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69

(11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

    Here, the Agreement that Petitioner signed contains a provision expressly waiving

his rights to collateral post-conviction attack of his sentence or the voluntariness, providence,

or factual basis for the guilty plea. CR 302-005, doc. no. 266, p. 6. Moreover, Petitioner

stated that he understood there was no controlling agreement other than the written document

---

    [5]Case law concerning waiver of a direct appeal has also been applied to waiver of the right
to collateral proceedings.  Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States,
320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

    [6]As discussed in more detail in Part I.B.2, *infra*, even if the Court determines the
Petitioner's claims related to his underlying criminal proceedings are barred by the waiver
in the Agreement, that does not necessarily bar all of his ineffective assistance of counsel
claims.

he signed. Id. at 7. When questioned by Judge Bowen about any outside promises, Petitioner stated that his attorney had told him he was facing a sentence of five to ten years. Id. and Rule 11 Tr., pp. 13-14. However, Judge Bowen immediately and explicitly informed Petitioner that any such figures were estimations only; the Court, and only the Court, would decide the punishment - punishment which could range from five to forty years. Id. at 14-15. Petitioner stated that he understood and he went forward with entering his guilty plea. Id. at 15. In addition, both Petitioner and his attorney signed the Agreement verifying that they had read the Agreement and that the terms of the Agreement accurately represented the terms of the plea agreement. CR 302-005, doc. no. 266, p. 9.

Additionally, Judge Bowen specifically reviewed the appeal and collateral attack waiver provisions of the Agreement during the Rule 11 proceedings, and Petitioner agreed that Judge Bowen's review was correct.

JUDGE BOWEN:    You have also waived your right to appeal or make any habeas corpus attack as to any sentence that is imposed. Now the only way that your right to file an appeal could come back into play is if for some reason I found it necessary to impose a sentence above the guideline range in your case. If that happened, you would get your right to appeal back.

Now that's the way I understand your plea agreement. Have I correctly summarized it?

PETITIONER:    That[] sounds good enough to me.

JUDGE BOWEN:    Is that the same way you understand it?

PETITIONER:    Yes, sir.

Rule 11 Tr., pp. 11-12.[7]  Additionally, at the sentencing hearing, Judge Bowen again reiterated, without receiving any objection from Petitioner, that under the terms of the Agreement, he had waived any right of appeal or collateral attack.[8]  Sentencing Tr., p. 16.

The record clearly supports the conclusion that the Agreement Petitioner signed fully set forth the condition that he was waiving any right to pursue a collateral attack of his sentence.  Judge Bowen repeatedly reviewed the waiver provisions at the Rule 11 hearing and at sentencing, and Petitioner affirmed that he understood and agreed with the terms of the Agreement as explained by Judge Bowen.  Importantly, Petitioner never even suggests in his § 2255 motion that he did not understand or comprehend the waiver provision of the Agreement.  Thus, the Court concludes that the waiver is valid, and, but for select portions of his ineffective assistance of counsel claims, Petitioner's grounds for relief in the instant § 2255 motion are, therefore, barred from review.

**2.      Ineffective Assistance of Counsel Claims Not Covered by Waiver**

As noted above, Petitioner knowingly and voluntarily entered into the Agreement, which provided that Petitioner waived his rights to collateral review.  However, the government correctly concedes that some of Petitioner's ineffective assistance of counsel

_____

[7]Petitioner also stated to Judge Bowen at the guilty plea proceedings that no one had forced, threatened or pressured him into pleading guilty.  Rule 11 Tr., pp. 9-10.  The Court notes that "[s]olemn declarations in open court carry a strong presumption of verity," and Petitioner's sworn statements before Judge Bowen are a "formidable barrier" for him to overcome in these collateral proceedings.  Blackledge v. Allison, 431 U.S. 63, 74 (1977).

[8]As set forth in footnote 2, *supra*, Judge Bowen later rejected the direct appeal waiver provision of the Agreement.  Sentencing Tr., pp. 128-29.

7

claims may survive a valid waiver.[9]  (Doc. no. 6, p. 9).  To establish ineffective assistance

of counsel, Petitioner must meet a two-part test. Petitioner first must show that "counsel's

representation fell below an objective standard of reasonableness."    Strickland v.

Washington, 466 U.S. 668, 688 (1984). In applying this test, reviewing courts "must indulge

a strong presumption that counsel's conduct falls within the wide range of reasonably

professional assistance[.]"  Id. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375

(11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation").

"A petitioner must overcome a strong presumption of competence, and the court must give

significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202,

1204-05 (11th Cir. 2001).  Second, Petitioner must establish prejudice by showing "that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result

is reliable."  Strickland, 466 U.S. at 687.  In the context of a guilty plea, the Court must

---

[9]The Court disagrees with the government's contention that Petitioner's ineffective assistance of counsel claim with respect to the advice he received about entering the plea agreement is covered by the waiver. (See doc. no. 6, p. 9 (citing Williams v. United States, 396 F.3d 1340 (11th Cir. 2005), cert. denied, No. 05-5432, 2005 WL 1749521 (U.S. Oct. 3, 2005)). Williams specifically recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Id. at 1342 n.2; see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver.")  As will be discussed in more detail, one of Petitioner's ineffective assistance of counsel claims challenges the information that he was provided while he was deciding whether to enter a guilty plea. Thus, while Petitioner's claims about the performance of counsel at sentencing are barred by the waiver, the Court will address the claim that Petitioner was not provided adequate information about the government's burden of proof concerning the type of drugs Petitioner distributed. The effectiveness of counsel's performance on appeal will also be addressed.

normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion -- though the presumption is not insurmountable - - is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d

1506, 1512 (11th Cir. 1995) (*en banc*).  "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Id. at 1511.

As to appellate counsel, the Court's analysis under Strickland is further guided by the principle that appellate counsel is not ineffective when he fails to raise a meritless argument on appeal.  United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).  Stated another way, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit."  Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984).  Neither does the Sixth Amendment require appellate advocates to raise every non-frivolous issue.  Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).  To succeed on his appellate counsel claims, Petitioner must show that counsel's performance was prejudicial in that it affected the outcome of the appeal.  Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990); see also Davis v. Secretary for Dep't of Corrs., 341 F.3d 1310, 1316 (11th Cir. 2003) (*per curiam*) (same).

Because determining whether Petitioner suffered prejudice hinges upon the validity of the underlying claims, see Cross, 893 F.2d at 1290, the Court will review the merits of the ineffective assistance of counsel claims which are not barred by the waiver in the Agreement.

### a.    Advice of Counsel About Entry of Guilty Plea

Although Petitioner's overarching concern is the failure to receive the benefit of the five to ten year sentence that he claims defense counsel and the Assistant United States Attorney ("AUSA") promised him, Petitioner has claimed one instance of ineffective assistance of counsel that allegedly occurred prior to sentencing.  (Cf. Doc. no. 1, Attach.,

10

pp. 7, 8, 9, 11, 21 (arguing ineffective assistance at sentencing) with pp. 17-20 (arguing ineffective assistance regarding advice about taking plea agreement)).   Specifically, Petitioner makes the argument that his counsel should have informed him that the government would have had difficulty proving the drug involved in the transaction to which he pleaded guilty was actually crack cocaine because lab results on the substance in question revealed a low purity level. (Id. at 17-20).  According to Petitioner, he "never kn[ew] that the government had to meet a burden to establish a substance was crack." (Id. at 20).  Thus, goes the argument, counsel should never have "let" Petitioner plead guilty to a charge for which the government allegedly could not have met its burden of proof on the type of drug involved - a conclusion based wholly on Petitioner's favorable interpretation of an unidentified lab report. (Id.).

This claim fails to establish that Petitioner received constitutionally ineffective assistance of counsel.  First, Judge Bowen specifically informed Petitioner that by entering a guilty plea, he was giving up the right to put the government to its burden of proof.  Rule 11 Tr., pp. 8-9.  Moreover, when he signed the Agreement, Petitioner acknowledged that he had discussed possible defenses with his attorney and that he was giving up any possible defenses to the charged offense.  CR302-005, doc. no. 266, pp. 6, 7.  Thus, it is clear that Petitioner knew, prior to entering his guilty plea, that he was giving up his right to put the government to its burden of proof, and in exchange for the Agreement from the government, he was admitting the factual basis for his plea, namely that he distributed crack cocaine (id. at 3) - regardless of what the lab results showed about the purity of the crack cocaine involved in the transaction charged in Count 31 of the indictment.  His belated, conclusory

assertions[10] about what he knew about the government's burden of proof - assertions clearly

belied by the record - cannot now form a valid basis for an ineffective assistance of counsel

claim in these collateral proceedings.

### b.   Performance of Counsel on Appeal

Petitioner also alleges that he received ineffective assistance of counsel on appeal

because his counsel did not "raise the proper issues which would have made a difference in

the petitioner's conviction, had they been raised." (Doc. no. 1, Attach., p. 22). Petitioner

does not list the specific topics in this briefing, but instead generally references letters that

are attached as exhibits to his briefing.[11] However, other than the general conclusion that the

issues he wanted raised on appeal had merit, he fails to show that raising any of his issues

would have changed the result of the appellate proceedings.

First, Petitioner claims that counsel should have appealed based on the contention

that he had pleaded guilty based on the unfulfilled promise of a sentence of five to ten years

and based on the contention that his sentence was improperly based on a quantity of drugs

---

[10]The Court is aware that Petitioner submitted an affidavit in support of his motion. (Doc. no. 1, Attach., Pet'r Aff.). However, that affidavit makes no mention of Petitioner's alleged lack of knowledge about giving up the right to put the government to its burden of proof. In any event, the Rule 11 colloquy with Judge Bowen clearly shows that Petitioner was informed that by entering a guilty plea, he was giving up the right to force the government to prove its case and was admitting the factual basis for the plea. Rule 11 Tr., pp. 8-9.

[11]Petitioner notes in his briefing that he wrote to Judge Bowen requesting help with raising certain issues on appeal and that a letter was sent to counsel from Judge Bowen stating that counsel should look into raising Petitioner's issues. (Doc. no. 1, Attach., p. 23 and Ex. J). However, upon examination of Judge Bowen's letter, it is clear that it was an admonition that Petitioner stop writing directly to the Court and an attempt to make counsel aware of Petitioner's issues. (Id. at Ex. J). Nowhere in the letter does Judge Bowen instruct counsel to raise any particular issue or otherwise suggest that any particular issue that may have been raised in Petitioner's correspondence had any particular merit. (Id.).

that exceeded that listed in the one count to which he pleaded guilty.  (Doc. no. 1, Ex. I).
However, Judge Bowen clearly, and repeatedly explained to Petitioner at the Rule 11 hearing
that nobody could accurately predict or promise a sentence prior to the point at which the
Court imposed a sentence.

JUDGE BOWEN:    Now, when you are sentenced, as I told you[] earlier, you will be sentenced under the so called Federal Sentencing Guidelines. . . .  The lawyers can make estimates about what your Guidelines will be, <u>but nobody can tell you what your sentence is going to be until the day you are sentenced</u>.  I won't know myself until the day you are sentenced.  <u>The point that I am making is that nobody can tell you what the judge is going to do</u>.

Also, you cannot assume that because this indictment says five grams that you are going to be charged, under [the] Guidelines, for exactly five grams of cocaine base or crack cocaine.    The Government lawyer is obligated under the law to tell the probation officer all of the facts of the case and all of the counts of [the] indictment that you are involved in.  So, the drug quantity amount can vary depending on all of the facts of the case as far as your relevant conduct is concerned regardless of what is set forth in the particular count of the indictment that you are offering a plea of guilty to.

I want to make sure that each of you understand that your individual amount of crack cocaine will vary according to the real facts, true facts. It is not limited by the count of conviction.  Do you understand that explaination [sic] on how it works, Mr. Johnson?

PETITIONER:    Yes, sir.

JUDGE BOWEN:    Has anyone given you any prediction, prophecy or guaranty as to what sort of sentence I am going to impose in your case, Mr. Johnson?

PETITIONER:          Yes, five years and no more than ten.

JUDGE BOWEN:          No more than ten years and no less than five?

PETITIONER:          Yes, sir.

JUDGE BOWEN:          Is that correct, Mr. Harrington?

MR. HARRINGTON:          Your Honor, I have told my client in my estimation his sentence would be less than ten years. In fact, I have suggested it would probably be around five years.

JUDGE BOWEN:          Estimates are fine, Mr. Johnson. The lawyers can make all of these calculations, but nobody can tell you, until the day you are sentenced, what the judge is going to do. Do you understand that?

PETITIONER:          Yes, sir.

JUDGE BOWEN:          In your case the maximum statutory penality [sic] is not less than five years and no more than 40 years; do you understand that?

PETITIONER:          Yes.

JUDGE BOWEN:          I don't know what is going to happen in your case. A lot depends on whether you get a credit for acceptance of responsibility and all of that. Do you understand that?

PETITIONER:          Yes, sir.

Rule 11 Tr., pp. 12-14 (emphasis added).  This exchange occurred well in advance of the point at which Petitioner affirmatively responded to Judge Bowen that he was guilty as charged in Count 31 of the indictment and at which point Judge Bowen accepted Petitioner's guilty plea.[12]  Id. at 24, 26.

---

[12]Petitioner also raised the issue of an alleged promised sentence of five to ten years at his sentencing hearing.  Sent. Tr., p. 110.  When the AUSA denied that he had made any

Petitioner simply cannot show that he was prejudiced by counsel's decision not to raise the issue that Petitioner did not receive the sentence allegedly promised of five to ten years because Judge Bowen clearly explained that no one could promise Petitioner what his sentence would be. Nor was there a basis for arguing that Petitioner was erroneously sentenced for all of his relevant conduct rather than solely for the quantity of drugs charged in Count 31. That is, as the law existed at the time Petitioner was sentenced, a defendant could be sentenced based on all relevant conduct, even if that relevant conduct was determined on the basis of judicially determined facts. See United States v. Harris, 244 F.3d 828, 830 (11th Cir. 2001).[13] "Because Apprendi only addresses facts that increase the penalty for a crime beyond the statutory maximum, it does not apply to those findings that merely cause the guideline range to shift within the statutory range." United States v.

---

promises to Petitioner at the time he entered his guilty plea, Judge Bowen referenced the Rule 11 colloquy and stated his contentment with the information obtained at that time about what had been promised to Petitioner. Id. at 120. As this issue about alleged promises of a five to ten year sentence from defense counsel and the AUSA has been thoroughly explored before Judge Bowen, this Court need not delay its consideration of the § 2255 motion based on the pending motion for reconsideration concerning Judge Bowen's July 1, 2005 denial of Petitioner's motion to compel the production of information which Petitioner argues supports his allegations about a promise of a five to ten year sentence. See CR 302-005, doc. nos. 379, 396, 398. Stated otherwise, regardless of what Petitioner now contends defense counsel and the AUSA allegedly told him prior to entry of his guilty plea, Judge Bowen made it abundantly clear that only he could determine Petitioner's sentence; information from other sources was simply a non-binding estimation.

[13]In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). However, at the time Petitioner was sentenced, the rule in the Eleventh Circuit was that Apprendi did not apply to the consideration of relevant conduct under the Sentencing Guidelines. Harris, 244 F.3d at 830.

Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001) (*en banc*).[14] The relevant conduct considered by Judge Bowen did not increase Petitioner's penalty beyond the statutory range of five to forty years applicable to Count 31 of the indictment. Rule 11 Tr., p. 12.

Next, Petitioner claims that counsel should have appealed Judge Bowen's decision to deny him an acceptance of responsibility reduction. (Doc. no. 1, Ex. I). However, at sentencing, after hearing from Petitioner, Judge Bowen specifically noted, "It is probably obvious that I have been trying to have it colored so that he could get the acceptance of responsibility credit, but it appears that the probation officer has rightfully denied that credit."[15] Sent. Tr., p. 123. Given that Judge Bowen's specifically indicated that he had attempted to provide Petitioner with the opportunity to gain an acceptance of responsibility credit but had instead heard nothing to earn Petitioner such a reduction, Petitioner simply cannot show that he was prejudiced by counsel's decision not to raise this issue that stood little, if any, chance of success on appeal.[16] Cf. United States v. McPhee, 108 F.3d 287, 289

---

[14]Of course, this analysis changed in the wake of the Supreme Court's ruling in Booker v. United States, 543 U.S.–, 125 S. Ct. 738 (2005). This decision - and its inapplicability to Petitioner's case - is discussed in more detail in Part I.D, *infra*.

[15]In fact, Judge Bowen further noted, "I agree with the probation officer that the defendant has minimized his conduct and has essentially, at this late date, after giving me information sufficient to accept his guilty plea, is now denying almost everything and I think in a[n] untruthful and very manipulative way." Sent. Tr., p. 124.

[16]According to the application notes to USSG § 3E1.1:

1.   In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively

(11th Cir. 1997) (noting that because sentencing court "is in a unique position to determine whether a defendant accepted responsibility," such determinations are reviewed on appeal "for clear error and with great deference").

In sum, Petitioner has not shown that he suffered any prejudice as a result of counsel's decision not to raise on appeal a particular issue about which Petitioner now complains. Therefore, Petitioner has not satisfied the Strickland standard discussed *supra*, and he is not entitled to relief on these claims.

## C.    No Breach of the Agreement

Turning next to Petitioner's argument that he should not be barred from pursuing collateral relief on all issues raised in his § 2255 motion, despite the waiver in the Agreement, the Court finds that this claim also fails. Petitioner maintains that he has been released from the terms of the Agreement because the government first breached the Agreement when the AUSA allegedly made a sentence recommendation. Closely related to this first claim of breach of the Agreement, Petitioner also claims that the AUSA made improper "influencing statements" that could have influenced the Court to impose a higher

---

admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

USSG § 3E1.1 n.1(a).

sentence and improperly discussed drug quantities other than the quantities involved in the count to which he pleaded guilty.

As noted above, the Agreement provided, *inter alia*, that in exchange for the guilty plea, the government agreed that it would make no recommendation as to sentence. CR 302-005, doc. no. 266, p. 2. Nonetheless, the Agreement also stated that nothing in the document abrogated "the duty and right of the government to bring all sentencing facts to the attention of the sentencing court. . . ." Id. at 4.    The Agreement also specifically explained that the calculation of Petitioner's sentence would be based on consideration of all conduct related to the offense of conviction, including conduct related to dismissed counts. Id.  In addition, Judge Bowen told Petitioner at the Rule 11 proceedings that the government had a duty to inform the Probation Officer of all relevant conduct. Rule 11 Tr., p. 13.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971).  Whether the government violated the Agreement "'is judged according to the defendant's reasonable understanding at the time he entered his plea.'" United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996) (citation omitted).  Moreover, if the government disputes the signing defendant's understanding of a plea agreement, the terms of such a plea agreement must be evaluated according to objective standards. United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992).  Under these principles, Petitioner's claims fail.

As to the allegations of breach of the Agreement based on the statements of the AUSA at sentencing, Petitioner relies heavily on cases in which the disputed plea agreements

18

contained terms about specific drug quantities or a specific sentence. See, e.g., United States v. Johnson, 132 F.3d 628, 630-31 (11th Cir. 1998) (*per curiam*) (finding breach of plea agreement where government agreed that an amount of marijuana not greater than 100 pounds should be attributed to defendant but then in essence argued in favor of PSI recommendation of sentence based on 1400 pounds of marijuana because co-conspirator with information on higher drug quantity had not been interviewed until after plea agreement made); Taylor, 77 F.3d at 369-71 (finding breach of oral plea agreement where government agreed to recommend ten-year sentence but advocated PSI position on related conduct that resulted in sentence 31 months longer than ten years). Petitioner also relies on the inapposite case of Rewis to support the argument that the AUSA was indirectly skirting the terms of the "no sentence recommendation" provision by attempting to influence the Court with disparaging remarks. (Doc. no. 1, Attach., p. 10).

Here, the government did not agree to make a specific recommendation. To the contrary, it agreed to make no recommendation but specifically reserved the right to inform the sentencing court of all relevant sentencing factors.[17] CR 302-005, doc. no. 266, pp. 2, 4. In Rewis, the government sought to strike the first blow by submitting a sentencing memorandum that read like a "'diatribe' about [the defendant's] noncooperation and how noncooperation must be deterred to stave off the encroaching criminal element." 969 F.2d at 988. Here, however, the AUSA's non-specific request that Petitioner be sentenced "within the guideline range appropriate to his actual criminal conduct," came in response to lengthy

---

[17]Notably, "[n]o limitation is placed on the information concerning the background, character, and conduct of a defendant that the sentencing judge may consider." United States v. Lopez, 898 F.2d 1505, 1512 (11th Cir. 1990) (citations omitted).

testimony from Petitioner in which he denied almost everything, and as Judge Bowen termed it, "in a untruthful and very manipulative way." Sent. Tr., pp. 30-44 (Petitioner's testimony), 96 (AUSA remark), 124 (Judge Bowen's characterization of testimony). While it is true that the AUSA requested that Judge Bowen find that the total quantity of crack cocaine attributable to Petitioner well exceeded the PSI calculation of 1.5 kilograms (id. at 95), Judge Bowen had asked for a response to the testimony from Petitioner and other co-defendants who had presented conflicting testimony about drug quantities. In essence, the AUSA was offering a summary of the evidence in an effort to correct and/or clarify misstatements or misinformation that had been presented to the sentencing court; such comments do not breach a plea agreement in which the government has agreed to take no position on sentencing. United States v. Block, 660 F.2d 1086, 1091 (5th Cir. Unit B Nov. 1981) ("Efforts by the Government to provide relevant factual information or to correct misstatements are not tantamount to taking a position on the sentence and will not violate the plea agreement" [in which the government agrees to take no position on the sentence]).

The instant case is more closely in line with United States v. Carrazana, 921 F.2d 1557 (11th Cir. 1991). In that case, the defendant pleaded guilty to one count of a five-count indictment that charged the defendant with possession with intent to distribute cocaine; in exchange the government agreed to dismiss the remaining counts of the indictment and to "make no recommendation as to the quantity or quantum of punishment." Id. at 1569. There, as here, the government also retained the right to inform the sentencing court of all facts relevant to the sentencing process. Id. When defense counsel recommended a twenty-year sentence, the government responded with a characterization of the defendant as the

20

kingpin of his organization. Id.  On appeal, the defendant argued that the government's comment amounted to a criticism of the recommended twenty-year sentence and a statement urging the court to find the defendant guilty of managing an ongoing criminal enterprise - one of the charges that had been dismissed as part of the plea agreement. Id.

In rejecting the defendant's arguments, the Eleventh Circuit expressly noted that the government had retained the right to inform the sentencing court of facts relevant to sentencing, and information about the defendant's leading role in an offense -even an offense that had been charged but dismissed as part of the plea agreement - was relevant to sentencing. Id. "It is acceptable to consider evidence of crimes for which [the] defendant has been indicted but not convicted. Activities for which there has been no charge filed can be considered as well." Id. (citations omitted). Here, the AUSA's "influencing" comments came in response to the testimony that had attempted to minimize Petitioner's criminal activity helped not only to make Judge Bowen aware of conflicting testimony but also summarized information relevant to sentencing - a right and responsibility expressly set forth in the Agreement.[18,19]  Likewise, reference to drug quantities other those that charged in Count 31 was not a breach of the Agreement because the Agreement specifically stated that

---

[18]For example, early on at sentencing, defense counsel challenged the amount of drugs attributed to Petitioner by suggesting "that all of the other statements regarding weight are incorrect and are a fabrication." Sentencing Tr., p. 4. Defense counsel also cross examined more than one witness about drug quantities that could be attributed to Petitioner. See, e.g. id. at 12-15, 21-24, 26-28. Petitioner testified to handling only five or six ounces of cocaine in the three years prior to sentencing. Id. at 44. Thus, the quantity of drugs was clearly an issue in dispute about which the government had relevant information and about which the government had a responsibility to inform Judge Bowen.

[19]It is also worth noting that the government also chose not to cross-examine the defense witness offered in the mitigation portion of sentencing. Sentencing Tr., p. 108.

even conduct related to dismissed counts could be considered.[20] CR 302-005, doc. no. 266, p. 4. Therefore, bringing information concerning the quantity of drugs related to the dismissed conspiracy count to the attention of Judge Bowen did not breach the Agreement.

In sum, as Petitioner has not demonstrated that the government breached the Agreement, there is no basis for releasing Petitioner from the waiver provision of the Agreement into which Petitioner knowingly and voluntarily entered.

### D.    Principles of Blakely v. Washington Not Applicable on Collateral Review

Finally, Petitioner argues that the drug quantity attributed to him was incorrect. (Doc. no. 1, Attach., pp. 26-30). Even if this claim were not barred by the valid waiver in the Agreement, it is barred because a court ordinarily may not consider a claim in collateral proceedings that was raised and rejected on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); Edwards v. United States, 795 F.2d 958, 961 (11th Cir. 1986); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (per curiam). As the Seventh Circuit noted, "[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004). Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal.[21] Nyhuis, 211 F.3d at 1343.

---

[20]Moreover, as discussed in Part I.B(2)(b), at the time Petitioner was sentenced, a defendant could be sentenced based on judicially determined facts concerning relevant conduct.

[21]Stated another way, simply putting a new name on an old issue will not suffice.

22

Here, Petitioner raised the issue of the quantity of drugs attributed to him for sentencing purposes in his direct appeal, but the Eleventh Circuit rejected his arguments. (Doc. no. 3, Ex. 1). Thus, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must not only overcome the hurdle of his valid waiver (which, as described above, he has not done), but he would then also have to show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

Petitioner relies on a change in the law to support his claim. According to Petitioner the Supreme Court decision in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004) represents the necessary change in the law. (See doc. no. 4). In Blakely, the Supreme Court revisited the rule of Apprendi v. New Jersey, 530 U.S. 466 (2000) to determine that a sentence enhanced under the State of Washington's sentencing guidelines based on facts found by the sentencing judge and not the jury violated the defendant's Sixth Amendment rights. 124 S. Ct. at 2538. Then, in Booker v. United States, 543 U.S.-, 125 S. Ct. 738 (2005), issued after Petitioner filed his briefing papers in this case,  the Supreme Court explicitly ruled on the Federal Sentencing Guidelines and "concluded that the mandatory nature of the Guidelines made them incompatible with the Sixth Amendment's guarantee to the right to a jury trial where '[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [was not] admitted by the defendant or proved to a jury beyond a reasonable doubt.'" Varela v. United States, 400 F.3d 864, 867 (11th Cir. 2005) (per

23

*curiam*)(citations omitted).  However, Petitioner's conviction became final 90 days after the Eleventh Circuit issued its opinion on October 31, 2003.  See Clay v. United States, 537 U.S. 522, 525 (2003) (holding that "a judgment of conviction becomes final when the time expires for filing a petition for certiorari (90 days under Sup. Ct. R. 13(1)) contesting the appellate court's affirmation of the conviction).  As the Supreme Court decided both Blakely and Booker after Petitioner's conviction became final in January of 2004,[22] and as the Eleventh Circuit has already determined that these cases are not applicable to cases on collateral review, Varela, 400 F.3d at 868, Petitioner's Blakely / Booker arguments do not provide a valid basis for relief in these proceedings.[23]

In sum, Petitioner is not entitled to relief based on his claim that an improper quantity of drugs was attributed to him at sentencing.

## II. CONCLUSION

For the reasons set forth above, the Court finds that Petitioner validly waived his right to collateral review and his remaining ineffective assistance of counsel claims are without merit.  Accordingly, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255

---

[22]Blakely was decided on June 24, 2004.  The Booker decision issued on January 12, 2005.

[23]To the extent that Petitioner claims that he should be excused from compliance with the waiver of collateral proceedings in light of Blakely / Booker, that claim also fails.  The Eleventh Circuit has ruled that a Blakely / Booker claim may be waived by a valid sentence appeal waiver.  United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005), *cert. denied*, No. 04-1663, 2005 WL 2493867 (U.S. Oct. 11, 2005); United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005) (*per curiam*), *cert. denied*, 125 S. Ct. 2279 (U.S. May 16, 2005).

motion be **DENIED,** that this civil action be **CLOSED**, and that a final judgment be
**ENTERED** in favor of the government.

SO REPORTED and RECOMMENDED this 2nd day of November, 2005, at
Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE